IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE: | Chapter 11 |
| CYPRUS MINES CORPORATION,[1] | Case No. 21-10398 (LSS) |
| Debtor. | Hearing Date: March 12, 2021, at 10:00 a.m. ET<br>Obj. Deadline: March 5, 2021, at 4:00 p.m. ET |

**DEBTOR'S MOTION FOR ENTRY OF AN ORDER
(I) ESTABLISHING BAR DATES FOR SUBMITTING PROOFS
OF CLAIM, (II) APPROVING PROCEDURES FOR SUBMITTING
PROOFS OF CLAIM, AND (III) APPROVING NOTICE THEREOF**

Cyprus Mines Corporation (the "Debtor"), as debtor and debtor-in-possession in the above-captioned chapter 11 case (this "Chapter 11 Case"), through its undersigned counsel, submits this motion (this "Motion"), pursuant to sections 105(a), 501, and 503 of title 11 of the United States Code, 11 U.S.C. § 101 *et seq.* (the "Bankruptcy Code"), Rules 2002 and 3003(c) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 1009-2, 2002-1, and 3003-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), for the entry of an order: (i) establishing bar dates by which all entities, except as otherwise provided herein, asserting claims against the Debtor must file proofs of claim;[2] (ii) approving procedures for filing proofs of claim in this Chapter 11 Case; and (iii) approving the general form and manner of notice thereof. In support of this Motion, the Debtor relies on the *Declaration of D. J. (Jan) Baker, Independent Director of the Debtor, in Support of Chapter 11 Petition and First Day Pleadings* [D.I. 7] (the "First Day Declaration"), and respectfully represents as follows:

---

[1] The last four digits of the Debtor's taxpayer identification number are 0890. The Debtor's address is 333 N. Central Ave., Phoenix, AZ 85004.

[2] As used herein, the term "claim" has the meaning given in section 101(5) of the Bankruptcy Code.

**JURISDICTION AND VENUE**

1. The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this Chapter 11 Case, the Debtor, property of the Debtor's estate, and this matter under 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2. Pursuant to Local Rule 9013-1(f), the Debtor consents to the entry of a final judgment or order with respect to this Motion if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

3. Venue is proper in the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The statutory predicates for the relief requested herein are sections 105(a), 501, and 503 of the Bankruptcy Code. Such relief is warranted under Bankruptcy Rules 2002 and 3003(c) and Local Rules 1009-2, 2002-1, and 3003-1.

**BACKGROUND**

5. On February 11, 2021 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the Court.

6. The Debtor continues in the management of its property as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner, or creditors' committee has been appointed in this Chapter 11 Case.

7. Information regarding the Debtor and this Chapter 11 Case, including the Debtor's former mining business, corporate structure, financial condition, and the reasons for and objectives of this Chapter 11 Case, is set forth in the First Day Declaration and incorporated herein by reference.

8. The Debtor has been named as a defendant in hundreds of talc-related personal injury lawsuits, in which claimants seek money damages for personal injuries allegedly resulting from exposure to talc products that were manufactured and distributed by others using talc mined and sold by the Debtor or its former subsidiaries. The Debtor's primary goal in filing this Chapter 11 Case is to confirm a plan of reorganization pursuant to sections 105(a), 524(g), and 1129 of the Bankruptcy Code that channels all of the present and future Talc Personal Injury Claims,[3] including Demands (as defined in section 524(g) of the Bankruptcy Code), to a trust vested with substantial assets and that provides for a channeling injunction prohibiting claimants from asserting any Talc Personal Injury Claim against the Debtor and other protected parties. The Debtor's proposed plan of reorganization, including the terms of the Debtor's global settlement and the persons and entities that will be protected parties under the plan, is described in further detail in the First Day Declaration.

---

[3] A "Talc Personal Injury Claim" is any claim and any future claim or Demand against the Debtor or any other protected party, whether known or unknown, including with respect to any manner of alleged bodily injury, death, sickness, disease or alleged disease process, emotional distress, fear of cancer, medical monitoring, or any other alleged injuries or harms (whether physical, emotional or otherwise and whether or not diagnosable or manifested before confirmation of a plan of reorganization or the close of this Chapter 11 Case), directly or indirectly arising out of or relating to the presence of or exposure to talc or talc-containing products in connection with the alleged pre-effective date acts or omissions of the Debtor or any other entity for whose conduct the Debtor has or is alleged to have liability, including, without limitation any claims directly or indirectly arising out of or relating to: (i) any products previously mined, processed, manufactured, sold and/or distributed by the Debtor or any other entity for whose conduct the Debtor has or is alleged to have liability; (ii) any materials present at any premises owned, leased, occupied or operated by any entity for whose products, acts, omissions, business or operations the Debtor has, or is alleged to have, liability; or (iii) any talc in any way connected to the Debtor alleged to contain asbestos or other constituent. Talc Personal Injury Claims include all such claims, whether: (i) in tort, contract, warranty, restitution, conspiracy, contribution, indemnity, guarantee, subrogation, or any other theory of law, equity or admiralty, whether brought, threatened or pursued in any United States court or court anywhere in the world; (ii) seeking compensatory, special, economic, non-economic, punitive, exemplary, administrative or any other costs, fees, injunctive or similar relief or any other measure of damages; (iii) seeking any legal, equitable or other relief of any kind whatsoever, including in the nature of alter ego, veil piercing, successor or vicarious liability, mere continuation, fraudulent transfer or conveyance, or conspiracy and including, for the avoidance of doubt, any claims arising out of or relating to the presence of or exposure to talc or talc-containing products assertable against the Debtor or any other protected party; or (iv) held by claimants residing within the United States or in a foreign jurisdiction. Talc Personal Injury Claims also include any such claims that have been resolved or are subject to resolution pursuant to any agreement, or any such claims that are based on a judgment or verdict. Talc Personal Injury Claims do not include any claim by any present or former employee of a predecessor or affiliate of the Debtor for benefits under a policy of workers' compensation insurance or for benefits under any state or federal workers' compensation statute or other statute providing compensation to an employee from an employer.

9.     In order for the Debtor to solicit the appropriate parties for purposes of voting on any plan of reorganization in this Chapter 11 Case and appropriately manage certain of their talc-related liabilities, the Debtor requires, among other things, complete and accurate information regarding the nature, validity, and amount of **Indirect** Talc Personal Injury Claims (as defined below) that will be asserted in this Chapter 11 Case.  Consequently, the Bar Dates (as defined below) that the Debtor is seeking to establish through this Motion will apply to Indirect Talc Personal Injury Claims in addition to all non-talc claims against the Debtor.

10.    As used in this Motion, an "Indirect Talc Personal Injury Claim" is a Talc Personal Injury Claim of any Corporation (as defined in section 101(9) of the Bankruptcy Code), co-defendant of the Debtor, or predecessor of the Debtor for contribution, reimbursement, subrogation, or indemnity, whether contractual or implied by law (as those terms are defined by applicable non-bankruptcy law of the relevant jurisdiction), and any other derivative Talc Personal Injury Claim of any Corporation, co-defendant of the Debtor, or predecessor of the Debtor, whether in the nature of or sounding in contract, tort, warranty, or other theory of law.[4]

11.    At this time, and as explained more fully below, the Debtor is not seeking a bar date for Talc Personal Injury Claims that are not Indirect Talc Personal Injury Claims ("Direct Talc Personal Injury Claims"), but reserves the right to seek such relief in the future if necessary or appropriate.

---

[4] For the avoidance of doubt, an Indirect Talc Personal Injury Claim shall not include any claim for or otherwise relating to death, injury, or damages caused by talc or a product or material containing talc that is asserted by or on behalf of any injured individual, the estate, legal counsel, relative, assignee, or other representative of any injured individual, or an individual who claims injury or damages as a result of the injury or death of another individual regardless of whether such claim is seeking compensatory, special, economic, non-economic, punitive, exemplary, administrative, or any other costs or damages, or any legal, equitable or other relief whatsoever, including pursuant to a settlement, judgment, or verdict.  By way of illustration and not limitation, an Indirect Talc Personal Injury Claim shall not include any claim for loss of consortium, loss of companionship, services and society, or wrongful death.

12. On February 17, 2021, the Court entered an order [D.I. 46] authorizing the Debtor to retain Prime Clerk LLC (the "Claims and Noticing Agent") as claims and noticing agent in this Chapter 11 Case.

## RELIEF REQUESTED

13. By this Motion, the Debtor seeks the entry of an order: (i) establishing Bar Dates (as defined below) by which all Entities (as defined in section 101(15) of the Bankruptcy Code), except as otherwise provided herein, asserting claims against the Debtor must file proofs of claim; (ii) approving the procedures described herein for submitting proofs of claim; and (iii) approving the form and manner of service of the bar date notice attached to the proposed order as **Exhibit 1** (the "Proposed Bar Date Notice").

## BASIS FOR REQUESTED RELIEF

14. Bankruptcy Rule 3003(c)(3) generally governs the filing of proofs of claim in chapter 11 cases and provides, in relevant part, that: "[t]he court shall fix and for cause shown may extend the time within which proofs of claim . . . may be filed." Fed. R. Bankr. P. 3003(c)(3). This Bankruptcy Rule provides further that any creditor who has a claim against the Debtor that arose prior to the Petition Date, and whose claim is not scheduled in the Debtor's schedules of assets and liabilities, schedules of executory contracts and unexpired leases, and statement of financial affairs (collectively, the "Schedules"), or whose claim is scheduled as disputed, contingent, or unliquidated in the Schedules must file a proof of claim. *See id.*

15. Although Bankruptcy Rule 2002(a)(7) generally provides that all parties-in-interest must receive, at a minimum, twenty-one (21) days' notice of the time fixed for filing proofs of claim pursuant to Bankruptcy Rule 3003(c), neither the Bankruptcy Code, the Bankruptcy Rules, nor the Local Rules specify a time by which proofs of claim must be filed in

chapter 11 cases (other than Bankruptcy Code section 502(b)(9), which provides that Governmental Units (as defined in section 101(27) of the Bankruptcy Code) shall have a minimum of 180 days after the entry of the order for relief to file proofs of claim).

16. Local Rule 2002-1(e) provides that "[i]n all cases under chapter 11, the debtor may request a bar date for the filing of proofs of claim or interest." The Court has authority to grant the relief requested in this Motion in furtherance of Bankruptcy Rule 3003 and Local Rule 2002-1(e), and under section 105(a) of the Bankruptcy Code, which empowers bankruptcy courts to enter "any order, process, or judgment that is necessary or appropriate" to carry out the provisions of the Bankruptcy Code. 11 U.S.C. § 105(a).

17. It is well-recognized that the general claims bar date plays an essential role in the twin goals of bankruptcy: (i) preserving a debtor's going concern value, and (ii) maximizing property available to satisfy creditors. *See, e.g.*, *Bank of Am. Nat. Tr. & Sav. Ass'n v. 203 N. LaSalle St. P'ship*, 526 U.S. 434, 453 (1999). The general claims bar date allows the debtor and parties-in-interest to expeditiously determine and evaluate the liabilities of the estate. The absence of such a deadline, in contrast, would prolong creditor uncertainty, increase the costs and expenses incurred by debtors in connection with the claims reconciliation process, and delay or even derail the claims process, therefore undercutting one of the principal purposes of bankruptcy law – "secur[ing] within a limited period the prompt and effectual administration and settlement of the debtor's estate." *See Chemetron Corp. v. Jones*, 72 F.3d 341, 346 (3d Cir. 1995).

18. The procedures described herein provide creditors with notice and opportunity and a clear process for filing proofs of claim and achieve administrative and judicial efficiency. The procedures described herein also provide notice of who should **not** file a proof of claim in

response to the Bar Dates, including holders of Direct Talc Personal Injury Claims. The proposed procedures provide clear instructions that will help avoid confusion or uncertainty among creditors that might lead them to file unnecessary protective proofs of claim or multiple proofs of claim that would cause expense and delay in the claims process for all parties. The proposed procedures are designed to comply with the Bankruptcy Code and provide the Debtor with flexibility in case of the need for supplemental bar dates or situations in which a creditor's claim status may change during this Chapter 11 Case (such as in the event of a contract rejection).

19.     Accordingly, the Debtor requests that the Court establish the following bar dates for filing proofs of claim in this Chapter 11 Case.

**A.     General Bar Date.**

20.     Except as otherwise provided herein, the Debtor requests that Entities, including, without limitation, individuals, partnerships, corporations, joint ventures, and trusts that assert a claim against the Debtor that arose prior to the Petition Date, including unpaid claims pursuant to section 503(b)(9) of the Bankruptcy Code (each, a "503(b) Claim"), be required to file a written proof of such claim so that it is actually received by the Claims and Noticing Agent **on or before April 30, 2021, at 5:00 p.m. (Eastern Time)** (or such later date that is at least forty-eight (48) days after the entry of the order granting this Motion) (the "General Bar Date").

21.     The Debtor will cause notices of the General Bar Date to be mailed at least twenty-one (21) days in advance thereof, as required by Bankruptcy Rule 2002. Specifically, the Debtor intends to give notice of the General Bar Date, substantially in the form of the Proposed Bar Date Notice, within thirteen (13) business days after the entry of the an order granting this Motion (the "Service Date"), by mailing a copy of the Proposed Bar Date Notice, together with a

proof of claim form substantially in the form attached to the proposed order as **Exhibit 2** (the "Proof of Claim Form"), to all known Entities holding potential claims against the Debtor, excluding holders of Direct Talc Personal Injury Claims and/or their counsel.

22.     The General Bar Date would be the date by which all Entities, other than Governmental Units, holding prepetition claims against the Debtor must file a written proof of claim, including a 503(b) Claim, so that such proof of claim is actually received by the Claims and Noticing Agent, unless such Entity's claim falls within one of the exceptions set forth in this Motion (including the exception for Direct Talc Personal Injury Claims). Subject to these exceptions, the General Bar Date would apply to all claims against the Debtor that arose or are deemed to have arisen prior to the Petition Date, including secured claims, unsecured priority claims, unsecured non-priority claims, and rejection damages claims for executory contracts and unexpired leases that have already been rejected by order of the Court in this Chapter 11 Case; *provided that* unless otherwise ordered by the Court, the bar date for filing claims arising from the rejection of executory contracts and unexpired leases of the Debtor shall be the later of: (i) the General Bar Date; (ii) **5:00 p.m. (Eastern Time), on the date that is thirty (30) days** following entry of an order approving the rejection of the applicable executory contract or unexpired lease of the Debtor or the effective date of such rejection if rejected pursuant to any rejection procedures approved by order of the Court in this Chapter 11 Case; and (iii) any date that the Court may fix in the applicable order approving such rejection (any such date, a "Rejection Damages Bar Date").

**B.      Governmental Bar Date**

23.     Section 502(b)(9) of the Bankruptcy Code provides, in relevant part, that "[a] claim of a governmental unit shall be timely filed if it is filed before 180 days after the date of

the order for relief or such later time as the [Bankruptcy Rules] may provide . . . ." 11 U.S.C. § 502(b)(9). The Debtor requests that the Court establish **August 10, 2021, at 5:00 p.m. (Eastern Time)**, as the governmental bar date (the "Governmental Bar Date") in this Chapter 11 Case. Subject to the exceptions set forth in this Motion, the Governmental Bar Date would apply to all Governmental Units holding claims against the Debtor (whether secured, unsecured priority, or unsecured non-priority) that arose prior to the Petition Date, including Governmental Units with claims against the Debtor for any unpaid taxes, whether such claims arise from prepetition tax years or periods or prepetition transactions to which the Debtor was a party. All Governmental Units holding such claims against the Debtor would be required to file proofs of claim so that such proofs of claim are actually received by the Claims and Noticing Agent by the Governmental Bar Date.

C.      **Amended Schedules Bar Date**

24.     The Debtor retains the right to: (i) dispute, or assert offsets or defenses against, any filed claim or claim listed or reflected in the Schedules as to the nature, amount, liability, priority, classification, or otherwise; (ii) subsequently designate any claim as disputed, contingent, or unliquidated; and (iii) otherwise amend, modify, or supplement the Schedules; *provided*, *however*, if the Debtor amends or supplements schedule D, E, or F of its Schedules to reduce the undisputed, noncontingent, and liquidated amount or to change the nature or classification of a claim against the Debtor to contingent, unliquidated or disputed, or from secured to unsecured (or vice versa) after having given notice of the General Bar Date, the Rejection Damages Bar Date, and the Governmental Bar Date, the Debtor proposes that with respect to holders of claims adversely affected thereby, the Court establish the later of: (i) the General Bar Date or the Governmental Bar Date, if applicable, and (ii) **5:00 p.m. (Eastern**

**Time), on the date that is thirty (30) days** from the date on which the Debtor provides notice of the amendment or supplement to the Schedules, as the deadline by which claimants holding such claims must file proofs of claim with respect to such claims so that such proofs of claim are actually received by the Claims and Noticing Agent (such date, as applicable, an "Amended Schedules Bar Date" and, collectively with the General Bar Date, the Rejection Damages Bar Date, and the Governmental Bar Date, the "Bar Dates").  By contrast, if the amendment to schedules D, E, or F of the Schedules improves the amount or treatment of a previously scheduled or filed claim, the Debtor proposes that affected claimants that previously were served with a notice of the General Bar Date not be permitted to file additional claims or amend related previously filed proofs of claim by the Amended Schedules Bar Date.

25. Notice of the Amended Schedules Bar Date shall be sent to each claimant holding a claim adversely affected by any such amendment or supplement and shall describe the listing and treatment of such claim in the Schedules, including how such treatment has changed, if applicable, and indicate the Amended Schedules Bar Date for such claim.  Notwithstanding the foregoing, nothing contained herein would preclude the Debtor from objecting to any claim, whether scheduled or filed (or amended), on any grounds.

26. Accordingly, the Debtor respectfully submits that the proposed timeline will give all parties-in-interest adequate notice of all applicable Bar Dates and an opportunity to assert proofs of claim.

## **PROCEDURES FOR FILING PROOFS OF CLAIM**

27. Except as otherwise set forth herein, the Debtor proposes that the following Entities holding claims against the Debtor arising prior to the Petition Date be required to file proofs of claim on or before the applicable Bar Date:

i. any Entity (a) whose prepetition claim against the Debtor is not listed in the Schedules or is listed as disputed, contingent, or unliquidated and (b) that desires to participate in this Chapter 11 Case or share in any distribution in this Chapter 11 Case;

ii. any Entity that (a) believes that its prepetition claim is improperly classified in the Schedules or is listed in an incorrect amount and (b) desires to have its prepetition claim allowed in a classification or amount different from the classification or amount identified in the Schedules; and

iii. any Entity who believes that its claim against the Debtor is or may be entitled to priority under section 503(b)(9) of the Bankruptcy Code.

28. Notwithstanding the foregoing, the Debtor requests that the following Entities **not be** required to file a proof of claim on or before the applicable Bar Date:

a. any Entity whose claim is listed in the Schedules if (i) the claim is not scheduled as "disputed," "contingent," or "unliquidated" and (ii) such Entity agrees with the amount, nature, and priority of the claim as set forth in the Schedules;

b. any holder of a claim that has been paid in full or otherwise satisfied by the Debtor (or any other party);

c. any holder of a claim allowable under sections 503(b) and 507(a)(2) of the Bankruptcy Code as an expense of administration (other than a 503(b)(9) Claim, which must be asserted by the General Bar Date);

d. any Entity holding a claim against the Debtor for which a signed proof of claim has already been properly filed with the Clerk of the Bankruptcy Court for the District of Delaware or the Debtor's Claims and Noticing Agent in a form substantially similar to Official Bankruptcy Form No. 410; and

e. *any holder of a Direct Talc Personal Injury Claim.*

29. The Debtor proposes to exclude holders of Direct Talc Personal Injury Claims from the list of parties that are required to file a proof of claim by the Bar Date. The Debtor intends to resolve all Direct Talc Personal Injury Claims by seeking confirmation of a chapter 11 plan that establishes a trust to assume liability for all existing and future Direct Talc Personal Injury Claims and that will use its assets to resolve the Direct Talc Personal Injury Claims and, if eligible, compensate the holders of the Direct Talc Personal Injury Claims. Review and liquidation of the Direct Talc Personal Injury Claims will be accomplished by the trust pursuant

to trust distribution procedures established in connection with the Debtor's chapter 11 plan. Consequently, as the Court will never have occasion to adjudicate the Direct Talc Personal Injury Claims, there is no practical reason for holders of Direct Talc Personal Injury Claims to file proof of their Direct Talc Personal Injury Claims as part of the claims process in this Chapter 11 Case. Any effort to file Direct Talc Personal Injury Claims in this Chapter 11 Case merely would duplicate the trust's claims resolution process and cause unnecessary delay and expense for the Debtor's estate. For the avoidance of doubt, and for the reasons set forth above, holders of **Indirect** Talc Personal Injury Claims **must** file a proof of claim by the applicable Bar Date.

30. The Debtor requests that the Court require all proofs of claim submitted in this Chapter 11 Case be consistent with the following:

i. Each proof of claim must: (a) be signed by the claimant or, if the claimant is not an individual, by an authorized agent of the claimant; (b) be written in English; (c) be denominated in United States currency; (d) conform substantially with Official Form 410 or the Proof of Claim Form; (e) set forth with specificity the legal and factual basis for the alleged claim; and (f) include supporting documentation, or an explanation as to why such documentation is not available.

ii. In addition to the requirements set forth in (i) above, any proof of claim asserting a claim entitled to priority under section 503(b)(9) of the Bankruptcy Code must also: (a) include the value of the goods delivered to and received by the Debtor in the twenty (20) days prior to the Petition Date; (b) attach any documentation identifying the particular invoices for which the section 503(b)(9) claim is being asserted; and (c) attach documentation of any reclamation demand made to the Debtor under section 546(c) of the Bankruptcy Code (if applicable).

iii. Parties who wish to receive proof of receipt of their proof of claim from the Claims and Noticing Agent must also include with their proof of claim a copy of their proof of claim and a self-addressed, stamped return envelope.

iv. Each proof of claim, including supporting documentation, must be submitted so that the Claims and Noticing Agent *actually receives* the proof of claim on or before the applicable Bar Date by courier service, hand delivery, or United States first-class mail or electronically through the Claims and Noticing Agent's website.

31. The Debtor proposes that holders of claims be permitted to submit proofs of claim by courier service, hand delivery, or mail to Cyprus Mines Corporation Claims Processing Center, c/o Prime Clerk LLC, 850 3rd Avenue, Suite 412, Brooklyn, NY 11232. Additionally, proofs of claim may be completed and delivered electronically using the interface available on the Claims and Noticing Agent's website at http://cases.primeclerk.com/cyprusmines. Claimants who submit proofs of claim through the Claims and Noticing Agent's website will receive an electronic mail confirmation of such submissions. The Debtor requests that the Bar Date Order provide that (i) proofs of claim sent by facsimile, telecopy, or electronic mail will ***not*** be accepted and (ii) proofs of claim are deemed timely filed only if such claims are ***actually received*** by the Claims and Noticing Agent on or before 5:00 p.m. (Eastern Time) on the applicable Bar Date.

### CONSEQUENCES OF FAILURE TO FILE A PROOF OF CLAIM

32. The Debtor proposes that, unless the Court orders otherwise, pursuant to sections 105(a) and 502(b)(9) of the Bankruptcy Code and Bankruptcy Rule 3003(c)(2), any holder of a claim that is required to file a timely proof of claim against the Debtor in this Chapter 11 Case pursuant to the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, or the Bar Date Order sought herein, but that fails to do so on or before the applicable Bar Date, shall not receive or be entitled to receive any payment or distribution of property from the Debtor, its estate, or its successors or assigns with respect to such claim, shall be forever barred from asserting such claim against the Debtor, its estate, or its successors or assigns, and shall not be treated as a creditor with respect to such claim for purposes of voting upon any plan in this Chapter 11 Case.

### NOTICE OF THE BAR DATE ORDER AND THE BAR DATES

33. As soon as practicable, but in any event no later than thirteen (13) days after the entry of the Bar Date Order, the Debtor, pursuant to Bankruptcy Rule 2002(a)(7), proposes to

cause the Claims and Noticing Agent to serve by U.S. first-class mail, postage prepaid, the Proposed Bar Date Notice and a copy of the Proof of Claim Form (collectively, the "Bar Date Package") upon all known potential holders of claims (excluding holders of Direct Talc Personal Injury Claims), including: (i) all holders of claims listed in the Schedules, excluding holders of Direct Talc Personal Injury Claims; (ii) all counterparties to executory contracts and unexpired leases listed in the Schedules; (iii) the Internal Revenue Service; (iv) the taxing and other regulatory entities listed in the Schedules; (v) United States Attorney for the District of Delaware; (vi) all entities that have requested notices pursuant to Bankruptcy Rule 2002 in this Chapter 11 Case as of the date of entry of the Bar Date Order; (vii) all known holders of equity securities in the Debtor as of the date of the Bar Date Order; (viii) all other entities listed on the Debtor's matrix of creditors, excluding holders of Direct Talc Personal Injury Claims; (ix) all parties that have filed proofs of claim in this Chapter 11 Case prior to entry of the Bar Date Order; (x) all environmental authorities listed in the Schedules; (xi) all parties to litigation with the Debtor or their counsel (if known), excluding holders of Direct Talc Personal Injury Claims; and/or (xii) counsel to any of the foregoing, if reflected in the Debtor's accessible books and records. The Debtor, through the Claims and Noticing Agent, also will mail the Bar Date Notice Package to the United States Trustee, counsel to any official committee appointed in this Chapter 11 Case, and counsel to any future claimants' representative appointed in this Chapter 11 Case. For the avoidance of doubt, the Bar Date Notice Package will **not** be served on holders of Direct Talc Personal Injury Claims or their counsel.

34. The Proof of Claim Form will state, along with the claimant's name, whether the claimant's claim is listed in schedule D, E, or F of the Schedules and, if so, whether the claim is listed as: (i) disputed, contingent, or unliquidated; and (ii) secured, unsecured, or priority. The

dollar amount of the claim (as listed in schedule D, E, or F of the Schedules) also will be identified on the Proof of Claim Form.  In the event of any conflict between the claim information included in the Proof of Claim Form and the information provided in the Schedules, the Schedules shall control.  Any Entity that relies on the claim information in the Schedules bears responsibility for determining that its claim is accurately listed therein.

35. Among other things, the Proposed Bar Date Notice (i) identifies the Bar Dates, (ii) includes detailed procedures for filing a timely and accurate proof of claim with the Claims and Noticing Agent, (iii) identifies the parties that are not required to file a proof of claim, including the holders of Direct Talc Personal Injury Claims, (iv) describes the consequences of failing to file a proof of claim, and (v)  provides the name, email address, and telephone number of the Claims and Noticing Agent where questions may be addressed and from whom additional information may be obtained.

36. Service of the Proposed Bar Date Notice as proposed herein is reasonably designed to reach all interested parties in a cost effective manner and satisfies the requirements of the relevant provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.

37. Establishing April 30, 2021, at 5:00 p.m. (Eastern Time) as the General Bar Date in this Chapter 11 Case (or such later date that is at least forty-eight (48) days after the entry of the Bar Date Order) will give holders of claims an adequate amount of time (approximately 50 days) to review the Schedules and prepare and file proofs of claim, if necessary.  Further, notice of the General Bar Date would exceed the minimum 21-day notice period required by Bankruptcy Rule 2002(a)(7) and the minimum 30-day notice period for foreign creditors provided by Bankruptcy Rule 2002(p).  In addition, for orders approving the rejection of executory contracts or unexpired leases entered after the date that the General Bar Date has

passed, the Debtor may include a description of the Rejection Damages Bar Date in the text thereof, thus providing additional notice of the Rejection Damages Bar Date. Similarly, the Debtor will provide affected parties with at least thirty (30) days' notice of the Amended Schedules Bar Date.

38.     After the initial mailing of the Bar Date Package, the Debtor may, in its discretion, make supplemental mailings of notices, including in the event that: (i) notices are returned by the post office with forwarding addresses; (ii) certain parties, acting on behalf of parties-in-interest, decline to pass along notices to these parties and instead return their names and addresses to the Debtor or its Claims and Noticing Agent for direct mailing; and (iii) additional potential claimants that become known as a result of the General Bar Date noticing process. In this regard, the Debtor requests that the Court permit it to make supplemental mailings of the Bar Date Package in these and similar circumstances at any time up to thirty (30) days in advance of the applicable Bar Date, with any such mailings deemed timely and the relevant Bar Date being applicable to the recipient creditors. If Bar Date Notice Packages are returned by the post office or if certain parties acting on behalf of parties-in-interest decline to forward the Bar Date Notice Packages to parties-in-interest (each as more fully described in subsections (i) and (ii) of this paragraph), the Debtor may (but would not be required to) set a supplemental bar date without further order of the Court provided that the Debtor provides all parties with notice sufficient to comply with Bankruptcy Rule 2002(a)(7).

39.     For the reasons discussed above, the Debtor respectfully submits that the Bar Dates and the form and manner of providing notice thereof are appropriate in light of the circumstances, are in the best interest of the Debtor, its estate, and all parties-in-interest, and should be approved.

**DEBTOR'S RESERVATION OF RIGHTS**

40. Nothing contained herein or in the Bar Date Order or Proposed Bar Date Notice is intended or should be construed as a waiver of any of the Debtor's rights, including, without limitation, its rights to: (i) dispute, or assert offsets or defenses against, any filed claim or any claim listed or reflected in the Schedules as to the nature, amount, liability, or classification therefore; (ii) subsequently designate any scheduled claim as disputed, contingent, or unliquidated; or (iii) otherwise amend the Schedules. In addition, nothing contained herein or in the Bar Date Order or the Proposed Bar Date Notice is intended to be an admission of the validity of any claim against the Debtor or an approval, assumption, or rejection of any agreement, contract, or lease under section 365 of the Bankruptcy Code.

**NOTICE**

41. Notice of this Motion has been provided to the entities identified on the Master Service List established in this Chapter 11 Case, counsel to the prepetition representative for future talc claimants, and counsel to the prepetition ad hoc committee of law firms representing holders of Talc Personal Injury Claims. The Debtor submits that, in light of the nature of the relief requested herein, no other or further notice is necessary.

**NO PRIOR REQUEST**

42. No previous request for the relief sought herein has been made to the Court or any other court.

WHEREFORE, the Debtor respectfully requests that the Court enter an order, substantially in the form attached hereto as **Exhibit A**: (i) establishing the Bar Dates by which all Entities, except as otherwise provided herein, asserting claims against the Debtor must file proofs of claim in this Chapter 11 Case; (ii) approving the procedures described herein for

submitting proofs of claim; (iii) approving the form and manner of service of the Proposed Bar Date Notice; and (iv) granting such further relief to the Debtor as is appropriate.

Dated: February 18, 2021
Wilmington, Delaware

Respectfully submitted,

REED SMITH LLP

By:  */s/ Kurt F. Gwynne*
Kurt F. Gwynne (No. 3951)
Jason D. Angelo (No. 6009)
1201 North Market Street, Suite 1500
Wilmington, DE 19801-1163
Telephone: (302) 778-7500
Facsimile: (302) 778-7575
E-mail: kgwynne@reedsmith.com
E-mail: jangelo@reedsmith.com

-and-

Paul M. Singer (admitted *pro hac vice*)
Luke A. Sizemore (admitted *pro hac vice*)
Reed Smith Centre
225 Fifth Avenue, Suite 1200
Pittsburgh, PA 15222
Telephone: (412) 288-3131
Facsimile: (412) 288-3063
E-mail: psinger@reedsmith.com
E-mail: lsizemore@reedsmith.com

*Proposed Counsel to Debtor and Debtor-in-Possession*