# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE: | Chapter 11 |
| CYPRUS MINES CORPORATION,[1] | Case No. 21-10398 (LSS) |
| Debtor. | Hearing Date: March 12, 2021, at 10:00 a.m. ET<br>Obj. Deadline: March 5, 2021, at 4:00 p.m. ET |

**DEBTOR'S APPLICATION TO RETAIN AND EMPLOY REED SMITH LLP, AS COUNSEL TO THE DEBTOR AND DEBTOR-IN-POSSESSION, *NUNC PRO TUNC* AS OF THE PETITION DATE, PURSUANT TO 11 U.S.C. § 327(a) AND FEDERAL RULE OF BANKRUPTCY PROCEDURE 2014**

Cyprus Mines Corporation (the "Debtor"), the debtor and debtor-in-possession in the above-captioned chapter 11 case (this "Chapter 11 Case"), hereby applies (this "Application") for the entry of an order, pursuant to section 327(a) of title 11 of the United States Code, 11 U.S.C. § 101 *et seq.* (the "Bankruptcy Code"), and Rule 2014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), authorizing the retention and employment of Reed Smith LLP ("Reed Smith") as counsel to the Debtor *nunc pro tunc* as of the Petition Date (as defined herein). In support of this Application, the Debtor relies on (i) the *Declaration of Paul M. Singer Under Fed. R. Bankr. P. 2014 in Support of Debtor's Application to Retain and Employ Reed Smith LLP, as Counsel to the Debtor and Debtor-in-Possession,* Nunc Pro Tunc *as of the Petition Date* (the "Singer Declaration"), attached hereto as **Exhibit B**, and (ii) *the Declaration of D. J. (Jan) Baker in Support of Debtor's Application to Retain and Employ Reed Smith LLP, as Counsel to the Debtor and Debtor-in-Possession,* Nunc Pro Tunc *as of the Petition Date* (the "Baker Declaration"), attached hereto as **Exhibit C**. In further support of this Application, the Debtor respectfully states as follows:

---

[1] The last four digits of the Debtor's taxpayer identification number are 0890. The Debtor's address is 333 North Central Avenue, Phoenix, AZ 85004.

**JURISDICTION AND VENUE**

1. The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this Chapter 11 Case, the Debtor, property of the Debtor's estate, and this matter under 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2. Pursuant to Local Rule 9013-1(f), the Debtor consents to the entry of a final judgment or order with respect to this Application if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

3. Venue of this Chapter 11 Case in this district is proper under 28 U.S.C. §§ 1408 and 1409.

4. The statutory predicate for the relief requested herein is section 327(a) of the Bankruptcy Code. Such relief is warranted under Bankruptcy Rule 2014(a).

**BACKGROUND**

5. On February 11, 2021 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the Court.

6. The Debtor continues in the management of its property as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner, or creditors' committee has been appointed in this Chapter 11 Case.

7. Information regarding the Debtor and this Chapter 11 Case, including the Debtor's former mining business, corporate structure, financial condition, and the reasons for and objectives of this Chapter 11 Case, is set forth in the *Declaration of D. J. (Jan) Baker,*

*Independent Director of the Debtor, in Support of Chapter 11 Petition and First Day Pleadings* [D.I. 7] (the "First Day Declaration"), which was filed on the Petition Date and is fully incorporated herein by reference.

## RELIEF REQUESTED

8.  By this Application, the Debtor respectfully requests that the Court enter an order, pursuant to section 327(a) of the Bankruptcy Code and Bankruptcy Rule 2014(a), substantially in the form of **Exhibit A**, authorizing the Debtor to retain and employ Reed Smith as its bankruptcy counsel *nunc pro tunc* as of the Petition Date, in accordance with this Application and the proposed order submitted herewith.

## BASIS FOR REQUESTED RELIEF

9.  Pursuant to section 327(a) of the Bankruptcy Code, a debtor-in-possession may employ a professional person who does not hold or represent an interest adverse to the estate and that is a disinterested person, to assist the debtor in carrying out its duties under the Bankruptcy Code. See 11 U.S.C. § 327(a). Section 1107(b) of the Bankruptcy Code elaborates upon section 327(a) of the Bankruptcy Code in cases under chapter 11 of the Bankruptcy Code, providing that "a person is not disqualified for employment under section 327 of [the Bankruptcy Code] by a debtor in possession solely because of such person's employment by or representation of the debtor before the commencement of the case." 11 U.S.C. § 1107(b).

10.  Bankruptcy Rule 2014 requires that an application for retention include:

> specific facts showing the necessity for the employment, the name of the [firm] to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the [firm's] connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

Fed. R. Bankr. P. 2014.

**A.    QUALIFICATIONS**

11. Reed Smith has the necessary background to deal effectively with the potential legal issues that may arise in the context of this Chapter 11 Case, and for which Reed Smith is to be engaged. Indeed, the Debtor selected Reed Smith because of the firm's experience and knowledge in the field of business reorganizations under chapter 11 of the Bankruptcy Code and, in particular, its expertise representing debtors in mass tort cases.

12. The attorneys who will work on the Debtor's engagement possess a wealth of experience in chapter 11 restructurings, particularly with respect to debtors in asbestos-related cases. Over the last nineteen years, Reed Smith has served as general bankruptcy counsel to various debtors with substantial asbestos personal injury claims, including Pittsburgh Corning Corporation,[2] North American Refractories Company,[3] Harbison-Walker Refractories Company,[4] A.P. Green Industries, Inc.,[5] Hercules Chemical Company, Inc.,[6] Metex Mfg. Corporation,[7] Rapid-American Corporation,[8] Oakfabco, Inc.,[9] Geo. V. Hamilton, Inc.,[10] The Fairbanks Company,[11] and ON Marine Services Company LLC.[12] In each case, Reed Smith formulated a plan of reorganization to address each debtor's respective asbestos liabilities.

---

[2] U.S. Bankruptcy Court for the Western District of Pennsylvania, Case No. 00-22876-JKF.
[3] U.S. Bankruptcy Court for the Western District of Pennsylvania, Case No. 02-20198-JKF.
[4] U.S. Bankruptcy Court for the Western District of Pennsylvania, Case No. 02-21626-JKF (jointly administered with Global Industrial Technologies, Inc.).
[5] U.S. Bankruptcy Court for the Western District of Pennsylvania, Case No 02-21639-JKF (jointly administered with Global Industrial Technologies, Inc.).
[6] U.S. Bankruptcy Court for the District of New Jersey, Case No. 08-27822-MS.
[7] U.S. Bankruptcy Court for the Southern District of New York, Case No. 12-14554-BRL/CGM.
[8] U.S. Bankruptcy Court for the Southern District of New York, Case No. 13-10687-SMB.
[9] U.S. Bankruptcy Court for the Northern District of Illinois, Case No. 15-27062.
[10] U.S. Bankruptcy Court for the Western District of Pennsylvania, Case No. 15-23704-GLT.
[11] U.S. Bankruptcy Court for the Northern District of Georgia, Case No. 18-41768-PWB.
[12] U.S. Bankruptcy Court for the Western District of Pennsylvania, Case No. 20-20007-CMB.

13. In addition, Reed Smith represented W.R. Grace[13] in connection with its asbestos-related property damage claims. The firm also represented the creditors' committee in the Asarco LLC bankruptcy case[14] in which an estimated 100,000 asbestos cases were asserted against the debtors. Reed Smith also was extensively involved, on behalf of the plan sponsors, in the negotiation and confirmation of the plan of reorganization for Durabla Manufacturing Company and Durabla Canada Ltd.,[15] which established a trust pursuant to section 524(g) of the Bankruptcy Code to address the debtors' asbestos personal injury claims.

14. As set forth in the Singer Declaration, in preparing for its representation of the Debtor in this Chapter 11 Case, Reed Smith has become familiar with the talc-related legal issues that may arise in the context of this Chapter 11 Case.

15. Based on the foregoing, the Debtor respectfully submits that Reed Smith is well-qualified to perform these services and represent the Debtor in this Chapter 11 Case.

**B.    SERVICES TO BE RENDERED**

16. The employment of Reed Smith as the Debtor's counsel is appropriate and necessary to enable the Debtor to fulfill its duties as debtor and debtor-in-possession and to preserve and maximize the value of the Debtor's estate. The Debtor proposes to retain Reed Smith on the terms of this Application.

17. The Debtor anticipates that Reed Smith will render general legal services to the Debtor as needed throughout the course of this Chapter 11 Case, including, without limitation, the following legal services:

> (a)    represent the Debtor, as debtor-in-possession, to prepare all necessary motions, applications, answers, orders, reports, and other papers in connection with the administration of the Debtor's estate;

---

[13] U.S. Bankruptcy Court for the District of Delaware, Case No. 01-01139-JKF.
[14] U.S. Bankruptcy Court for the Southern District of Texas, Case No. 05-21207.
[15] U.S. Bankruptcy Court for the District of Delaware, Case No. 09-14415 (MFW).

    (b)    advise the Debtor with respect to its powers and duties as debtor and debtor-in-possession in the continued management and operation of its business and assets;

    (c)    attend meetings and negotiate with representatives of creditors and other parties-in-interest and advise and consult on the conduct of the chapter 11 case, including all of the legal and administrative requirements of operating in chapter 11;

    (d)    represent the Debtor in actions to protect and preserve the Debtor's estate, including the prosecution of actions on its behalf, the defense of any actions commenced against the estate, negotiations concerning all litigation in which the Debtor may be involved, and objections to claims filed against the estate;

    (e)    represent the Debtor in connection with the negotiation and preparation on behalf of the Debtor of a chapter 11 plan and all related documents;

    (f)    appear before the Court, any appellate courts, and the U.S. Trustee, and protect the interests of the Debtor's estate before such courts and the U.S. Trustee;

    (g)    perform all other necessary legal services and provide all other necessary legal advice to the Debtor in connection with this Chapter 11 Case; and

    (h)    represent the Debtor on additional matters relating to this Chapter 11 Case that may be assigned to it from time to time.

18.    The Debtor filed contemporaneously herewith or intends to file applications to employ (i) Kasowitz Benson Torres LLP, as special conflicts counsel, and (ii) Prime Clerk LLC, as its administrative advisor. Reed Smith has advised the Debtor that it intends to monitor carefully the efforts of these other professionals and to coordinate with such professionals to clearly delineate their respective duties in order to prevent duplication of effort or cost. The efficient coordination of the efforts of the Debtor's attorneys and other professionals will greatly aid in the effective administration of the Chapter 11 Case.

C.  **COMPENSATION**

    A.  <u>Prepetition Compensation Arrangements</u>

19.  Reed Smith was retained by the Debtor in December 2019 in connection with: (i) the resolution of talc and other claims against the Debtor; and (ii) advising the Debtor on whether, and on what conditions, to commence a chapter 11 case. In connection with this engagement, the Debtor's ultimate parent, Freeport-McMoRan ("<u>Freeport</u>"), provided Reed Smith a retainer in the amount of $200,000.00. Reed Smith's invoices through January 2021 were paid by Freeport in the ordinary course of its business. On January 13, 2021, the Debtor utilized the proceeds of a prepetition intercompany loan from CAMC to increase Reed Smith's prepetition security retainer by $300,000.00, for a total security retainer of $500,000.00.

20.  On February 11, 2021, prior to the petition being filed, Reed Smith offset $200,000.00 against the prepetition security retainer which was an estimate, as of that date, of its unbilled fees and estimated expenses for the period from February 1, 2021, through February 10, 2021.

21.  Reed Smith expects to complete its reconciliation of its February pre-filing fees and expenses actually incurred no later than April 1, 2021. Once that reconciliation is complete, Reed Smith will make a corresponding adjustment to the amount of the prepetition security retainer on or about that date and disclose such adjustment in its first interim fee application.

    B.  <u>Terms of Retention and Proposed Postpetition Payment Procedures</u>

22.  Subject to the Court's approval of this Application, Reed Smith as general bankruptcy counsel of the Debtor intends to: (a) charge for its legal services on an hourly basis in accordance with the ordinary and customary hourly rates in effect on the date services are rendered; and (b) seek reimbursement of actual and necessary out-of-pocket expenses. Reed Smith will be compensated at its standard hourly rates (less an agreed discount of 10%), which

are based on the professional's level of experience and are periodically adjusted. Reed Smith will provide notice of any rate increase to the Debtor, the U.S. Trustee, and any official committees and will file such notice with the Court. The names, positions, and current hourly rates of those Reed Smith lawyers currently expected to spend significant time on this Chapter 11 Case are set forth in the Singer Declaration.

23. The Debtor understands that Reed Smith will, consistent with its policy with respect to its other clients, continue to charge the Debtor for all expenses incurred in the rendition of services. Reed Smith contemplates using the following expense categories: copies, outside printing, telephone, facsimile, online research, delivery service/couriers, postage, local travel, out-of-town travel (including subcategories for transportation, hotels, meals, ground transportation), meals (local), court fees, subpoena fees, witness fees, deposition transcripts, trial transcripts, trial exhibits, litigation support vendors, experts, investigators, arbitrators/mediators, and other.

24. To comply with the *Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases Effective as of November 1, 2013*, issued by the Executive Office of the United States Trustee (the "U.S. Trustee Guidelines"), the Debtor and Reed Smith have developed a staffing plan and are currently developing a prospective budget for the Chapter 11 Case (the "Budget and Staffing Plan") to comply with any requests for information and additional disclosures by the U.S. Trustee and any other orders of the Court for the period of time from the Petition Date through approximately March 31, 2021, recognizing that, during the course of the Chapter 11 Case, there may be unforeseeable fees and expenses that will need to be addressed by the Debtor

and Reed Smith. Reed Smith and the Debtor will review the Budget and Staffing Plan following the close of the budget period to determine a budget and staffing plan for the following period.

25. The Debtor understands that Reed Smith will apply to the Court for payment of compensation and reimbursement of expenses in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules of the U.S. Bankruptcy Court for the District of Delaware, any additional procedures that may be established by the Court in this Chapter 11 Case, and applicable guidelines established by the Office of the United States Trustee. Such applications will constitute a request for interim payment against Reed Smith's reasonable fees and expenses to be determined at the conclusion of the Chapter 11 Case. Reed Smith also intends to make a reasonable effort to comply with the U.S. Trustee's requests for information and additional disclosures as set forth in U.S. Trustee Guidelines, both in connection with the Application and any interim and final fee applications to be filed by Reed Smith in the Chapter 11 Case.

26. Other than as summarized in this Application, no arrangement is proposed between the Debtor and Reed Smith for compensation to be paid in this Chapter 11 Case. The Debtor understands that Reed Smith has not agreed to share compensation received in connection with this Chapter 11 Case with any other person, except as permitted by section 504(b) of the Bankruptcy Code and Bankruptcy Rule 2016(b) in respect of sharing compensation among Reed Smith's partners.

27. Reed Smith has stated its desire and willingness to act in this Chapter 11 Case and render the necessary professional services as attorneys for the Debtor.

28. Given the experience and background of the Reed Smith attorneys involved in this Chapter 11 Case, the type of services to be performed, and the market prices in existence for such services, the fee arrangements proposed by Reed Smith in this Application are reasonable.

**D. DISINTERESTEDNESS**

29. As set forth in the Singer Declaration, Reed Smith has in the past represented, currently represents, and likely in the future will represent, certain parties-in-interest in this Chapter 11 Case, but only in connection with matters wholly unrelated to the Debtor, this Chapter 11 Case, and such entities' claims against or interests in the Debtor. Pursuant to section 327(c) of the Bankruptcy Code, Reed Smith is not disqualified from acting as the Debtor's counsel merely because it has represented or currently represents certain parties-in-interest in matters unrelated to this Chapter 11 Case.

30. The Singer Declaration discloses Reed Smith's connections to the Debtor and parties-in-interest in this Chapter 11 Case. To the best of the Debtor's knowledge, and except as otherwise set forth in the Singer Declaration, the partners, counsel, and associates of Reed Smith (a) do not have any connection with the Debtor, its creditors, the U.S. Trustee, or any person employed in the office of the U.S. Trustee, or any other party-in-interest, or its respective attorneys and accountants, (b) are "disinterested persons," as that term is defined in section 101(14) of the Bankruptcy Code, and (c) do not hold or represent any interest adverse to the estate.

31. In the event that Reed Smith's representation of the Debtor in connection with any matter in this Chapter 11 Case would result in it becoming adverse to a party-in-interest that gives rise to a professional conflict, the Debtor will utilize the services of Kasowitz Benson

Torres LLP, as special conflicts counsel, or retain separate counsel to represent its interests with respect to such matter against such party.

32. The Debtor is aware that Reed Smith currently represents, and, since approximately 1994 has represented Johnson & Johnson in a number of different matters unrelated to the Debtor and this Chapter 11 Case. The Debtor and its former subsidiary supplied talc to Johnson & Johnson for a time during its history. Reed Smith will not represent the Debtor in connection with pursuing litigation against Johnson & Johnson regarding indemnification issues or otherwise. The Debtor has retained separate counsel, Kasowitz Benson Torres LLP, as special conflicts and indemnification counsel, to address any adversary proceeding in which Johnson & Johnson is directly adverse to the Debtor.

33. The Debtor understands that Reed Smith will continue to conduct periodic conflicts analyses to determine whether it is performing or has performed services for any significant parties-in-interest in the Chapter 11 Case and will promptly update the Singer Declaration to disclose any material developments regarding the Debtor or any other pertinent relationships that come to Reed Smith's attention.

## NOTICE

34. Notice of this Application has been provided to the entities identified on the Master Service List established in this Chapter 11 Case, counsel to the prepetition representative for future talc claimants, and counsel to the prepetition ad hoc committee of law firms representing holders of Talc Personal Injury Claims. In light of the nature of the relief requested herein, the Debtor submits that no other or further notice is necessary.

## NO PRIOR REQUEST

35. No previous request for the relief sought herein has been made to the Court or any other court.

WHEREFORE, the Debtor respectfully requests that the Court enter an order, substantially in the form attached hereto as **Exhibit A**: (i) authorizing the Debtor to retain and employ Reed Smith as its bankruptcy counsel in connection this Chapter 11 Case *nunc pro tunc* as of the Petition Date; and (ii) granting such other and further relief as may be just and proper.

Dated: February 18, 2021             Respectfully submitted,

CYPRUS MINES CORPORATION

By: */s/ D. J. (Jan) Baker*
    D. J. (Jan) Baker
    Director