**EXHIBIT C**

Baker Declaration

(Attached)

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| IN RE: | Chapter 11 |
| CYPRUS MINES CORPORATION, | Case No. 21-10398 (LSS) |
| Debtor.[1] | |

**DECLARATION OF D. J. (JAN) BAKER IN SUPPORT OF DEBTOR'S APPLICATION
TO RETAIN AND EMPLOY REED SMITH LLP, AS COUNSEL TO THE DEBTOR
AND DEBTOR-IN-POSSESSION, *NUNC PRO TUNC* AS OF THE PETITION DATE**

I, D. J. (Jan) Baker, as the sole independent Director and sole member of the Special Committee of the Board of Directors of the Debtor, being duly sworn, state the following under the penalty of perjury:

1.      I am the sole independent Director and sole member of the Special Committee of the Board of Directors of Cyprus Mines Corporation (the "Debtor"), having been elected as Director on February 1, 2020, and having been appointed to the Special Committee on January 8, 2021.  I am authorized to submit this declaration on behalf of the Debtor.

2.      I submit this declaration (the "Retention Declaration") in support of the *Debtor's Application to Retain and Employ Reed Smith LLP, as Counsel to the Debtor and Debtor-In-Possession,* Nunc Pro Tunc *as of the Petition Date, Pursuant to 11 U.S.C. § 327(a) and Federal Rule of Bankruptcy Procedure 2014* (the "Application").[2]  Except as otherwise noted, all facts in this Retention Declaration are based on my personal knowledge of the matters set forth herein, information gathered from my review of relevant documents, and information supplied to me by the Debtor's advisors.

---

[1]     The last four digits of the Debtor's taxpayer identification number are 0890.  The Debtor's address is 333 North Central Avenue, Phoenix, AZ 85004.

[2]     Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Application.

**THE DEBTOR'S SELECTION OF COUNSEL**

3.     The Debtor recognizes that a comprehensive review process is necessary when selecting and managing chapter 11 counsel to ensure that bankruptcy professionals are subject to the same client-driven market forces, scrutiny, and accountability as professionals in non-bankruptcy engagements.

4.     To that end, the review process utilized by the Debtor assessed potential counsel based on their expertise in the relevant legal issues and in similar proceedings.  On the basis of Reed Smith's past work for and experience with the Debtor, its extensive experience with and knowledge of chapter 11 proceedings, particularly mass tort chapter 11 cases, and its experience practicing before this Court, I recommended that the Debtor retain Reed Smith as restructuring counsel.

5.     Reed Smith was retained by the Debtor in December 2019 in connection with: (i) the resolution of talc-related claims against the Debtor; and (ii) valuating and advising the Debtor on whether, and on what conditions, to commence a chapter 11 case.

6.     Accordingly, I believe that Reed Smith has become uniquely familiar with the Debtor's historical mining operations and products, the Debtor's alleged talc-related liabilities, many of the potential legal issues that might arise in the context of the Chapter 11 Case, and the prospects for a successful resolution of the Chapter 11 Case.  I believe that for this reason, as well as Reed Smith's extensive experience in mass tort-related reorganizations under chapter 11 of the Bankruptcy Code, Reed Smith is both well qualified and uniquely able to represent the Debtor in the Chapter 11 Case.

**RATE STRUCTURE**

7.        In my capacity as the sole member of the Special Committee of the Board of Directors, I am responsible for supervising outside counsel retained by the Debtor in the ordinary course of business.  Prior to the engagement of Reed Smith, Reed Smith and I discussed, and I approved, Reed Smith's billing rates.  Reed Smith has informed the Debtor that its rates for bankruptcy representations are comparable to the rates Reed Smith charges for non-bankruptcy representations of similar complexity.  I am also responsible for reviewing the invoices regularly submitted by Reed Smith, and can confirm that the rates Reed Smith charged the Debtor in the prepetition period are consistent with the rates Reed Smith will charge the Debtor in the post-petition period, subject to standard rate adjustments between calendar years 2020 and 2021. Reed Smith and I will review the Budget and Staffing Plan following the close of the budget period to determine a budget and staffing plan for the following period.  Based on my experience and discussions with Reed Smith, I believe that the current staffing plan is, and that the budget will be, consistent with the Debtor's needs and that Reed Smith's rates are comparable to the rates of other comparably skilled professionals.

**COST SUPERVISION**

8.        The Debtor recognizes that it is the Debtor's responsibility to monitor closely the billing practices of its counsel to ensure the fees and expenses paid by the Debtor's estate remains consistent with the Debtor's expectations and the exigencies of the Chapter 11 Case. The Debtor will continue to review the invoices that Reed Smith regularly submits during the Chapter 11 Case to ensure fees and expenses remain reasonable.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true

and correct to the best of my knowledge and belief.

Dated:  February 18, 2021                                          /s/ D. J. (Jan) Baker
Garrison, New York                                                 D. J. (Jan) Baker
                                                                   Director

- 4 -