## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE: | Chapter 11 |
| CYPRUS MINES CORPORATION,[1] | Case No. 21-10398 (LSS) |
| Debtor. | **Hearing Date:** Jan. 7, 2025, at 10:00 a.m. (Eastern)<br>**Obj. Deadline:** Dec. 26, 2024, at 4:00 p.m. (Eastern) |

**DEBTOR'S MOTION FOR ENTRY OF AN ORDER (I) AUTHORIZING
THE TWELFTH AMENDMENT TO AMENDED AND RESTATED
SUPERPRIORITY DEBTOR-IN-POSSESSION CREDIT AGREEMENT TO
INCREASE THE AGGREGATE AMOUNT OF DIP LOANS AVAILABLE
THEREUNDER AND (II) GRANTING RELATED RELIEF**

Cyprus Mines Corporation (the "Debtor"), as debtor and debtor-in-possession in the above-captioned chapter 11 case (this "Case"), through its undersigned counsel, submits this motion (this "Motion") for entry of an order (the "Proposed Order"), substantially in the form attached as **Exhibit A**: (a) authorizing the Debtor to borrow up to an additional $9,000,000 in new money DIP Loans under the *Twelfth Amendment to Amended and Restated Superpriority Debtor-in-Possession Credit Agreement* (the "Amendment"), a copy of which is attached as Exhibit 1 to the Proposed Order, pursuant to sections 105, 362, and 364 of title 11 of the United States Code, 11 U.S.C. § 101 *et seq.* (the "Bankruptcy Code"), Rules 2002 and 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 4001-2 of the Local Bankruptcy Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"); and (b) granting related relief.[2] In support of this Motion, the Debtor respectfully represents as follows:

---

[1] The last four digits of the Debtor's taxpayer identification number are 0890. The Debtor's address is 333 N. Central Ave., Phoenix, AZ 85004.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the A&R DIP Credit Agreement (defined below) or the DIP Order (defined below), as applicable.

## JURISDICTION AND VENUE

1.      The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this Case, the Debtor, property of the Debtor's estate, and this matter under 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated February 29, 2012.  This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2.      Pursuant to Local Rule 9013-1(f), the Debtor consents to the entry of a final judgment or order with respect to this Motion if it is determined that the Court, absent consent of the parties, cannot enter final judgments or orders consistent with Article III of the United States Constitution.

3.      Venue is proper in the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The statutory predicates for the requested relief are sections 105, 362, and 364 of the Bankruptcy Code.  The requested relief is warranted under Bankruptcy Rules 2002 and 4001 and Local Rule 4001-2.

## BACKGROUND

### A.    The Chapter 11 Case.

5.      On February 11, 2021 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the Court.

6.      The Debtor continues in the management of its property as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in this Case.

7.      Additional information regarding the Debtor and this Case, including the Debtor's former mining business, corporate structure, financial condition, and the reasons for and objectives

of this Case, is set forth in the *Declaration of D. J. (Jan) Baker, Independent Director of the Debtor, in Support of Chapter 11 Petition and First Day Pleadings* [D.I. 7], which is incorporated herein by reference.

8.    On March 4, 2021, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed the Official Committee of Tort Claimants (the "TCC"). *See* D.I. 96.

9.    On June 10, 2021, the Court entered an Order appointing Roger Frankel as the future claimants' representative (the "FCR").  *See* D.I. 344.

10.    By order entered on November 30, 2021 [D.I. 673] (the "Mediation Order"), the Court authorized Kenneth R. Feinberg, Esq. to serve as mediator for the purpose of mediating (i) any and all issues related to the settlement entered into by and among the Debtor; Imerys Talc America, Inc., Imerys Talc Vermont, Inc., and Imerys Talc Canada Inc. (collectively, the "Imerys Debtors" and, together with the Debtor, the "Debtors"), certain other parties (collectively with the Debtors, the "Estate Mediation Parties"), and Cyprus Amax Minerals Company ("CAMC"); and (ii) the resolution of disputes over the obligations of certain insurers that issued insurance policies to the Debtor and its past and present affiliates (the "Mediation").

11.    Pursuant to the Mediation Order, the Mediation term initially was set to expire on February 28, 2022.  *See* D.I. 673.  However, the term of the Mediation was extended, on multiple occasions, through February 29, 2024 [D.I. 2334], to allow the Estate Mediation Parties and CAMC sufficient time to focus on resolution of the Global Settlement Issues (as defined in the Mediation Order), issues with respect to the Debtors' plans of reorganization (the "Plan Issues"), and the Insurance Issues (as defined in the Mediation Order).

12. On January 5, 2024, as a result of Mediation progress, the Debtor filed the *Ivory America/Cyprus Personal Injury Trust Distribution Procedures* and the *Ivory America/Cyprus Personal Injury Trust Agreement. See* D.I. 2080.

13. On January 31, 2024, as a result of additional Mediation progress, the Debtor filed the *Disclosure Statement for First Amended Plan of Reorganization of Cyprus Mines Corporation Under Chapter 11 of the Bankruptcy Code* [D.I. 2133] and the *First Amended Plan of Reorganization of Cyprus Mines Corporation Under Chapter 11 of the Bankruptcy Code* [D.I. 2132].

14. On February 15, 2024, the Debtors filed the *Motion of Debtors for Entry of Order (I) Approving Disclosure Statements for the (A) Second Joint Plan of Reorganization of Imerys Talc America, Inc. and Its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code and (B) First Amended Plan of Reorganization of Cyprus Mines Corporation Under Chapter 11 of the Bankruptcy Code, and the Form and Manner of Notice of Hearing Thereon, (II) Establishing Combined Solicitation Procedures, (III) Approving Forms of Ballots, (IV) Scheduling a Joint Hearing to Consider Confirmation of the Plans, (V) Approving Procedures for Notice of the Joint Hearing and for Filing Objections to Confirmation of the Plans, and (VI) Granting Related Relief* [D.I. 2160].

15. Following expiration of the Mediation on February 29, 2024, the Debtor and the Estate Mediation Parties began negotiations with Johnson & Johnson, Johnson & Johnson Holdco (NA) Inc. (f/k/a Johnson & Johnson Consumer, Inc.), and LLT Management LLC (f/k/a LTL Management LLC) (collectively, "J&J") to resolve numerous disputes regarding, among other issues, the parties' respective indemnification rights and obligations under various agreements and applicable law, the Debtors' entitlement to proceeds under any insurance policy that previously

did, does, or may provide coverage for talc claims that was issued to J&J or certain related parties, and J&J's objections to the Debtors' chapter 11 plans.

16.    As a result of those negotiations with J&J, the Debtors filed a joint motion [D.I. 2361] (the "J&J Settlement Motion") on July 13, 2024, seeking the Court's approval of the *Settlement Agreement and Release* (as amended and restated, the "J&J Settlement Agreement"), dated as of the same date, among the Debtors, Imerys S.A., Imerys Talc Italy S.p.A., CAMC, the TCC, the FCR, the talc claimants committee and the future claimants' representative appointed in the Imerys Debtors' chapter 11 cases, and J&J.  On October 31, 2024, the Court entered an order [D.I. 2634] (the "J&J Settlement Order") granting the J&J Settlement Motion and approving the J&J Settlement Agreement.

17.    On November 5, 2024, the Debtor filed the *Disclosure Statement for First Amended Plan of Reorganization of Cyprus Mines Corporation Under Chapter 11 of the Bankruptcy Code* [D.I. 2651] (the "Disclosure Statement") and the *First Amended Plan of Reorganization of Cyprus Mines Corporation Under Chapter 11 of the Bankruptcy Code* (the "Plan") [D.I. 2652].

18.    Also on November 5, 2024, the Bankruptcy Court entered an order [D.I. 2647] (the "Solicitation Procedures Order") approving the Disclosure Statement as containing "adequate information" within the meaning ascribed to such term in section 1125 of the Bankruptcy Code and establishing procedures for soliciting votes to accept or reject the Plan.  A hearing to consider confirmation of the Plan is scheduled to commence on April 22, 2025, at 10:00 a.m. (Eastern).

**B.    The Original DIP Credit Agreement and the A&R DIP Credit Agreement.**

19.    Prior to the Petition Date, CAMC and the Debtor entered into the *Superpriority Debtor-in-Possession Credit Agreement* (as amended, the "Original DIP Credit Agreement"), which provided for funding to the Debtor in an amount up to $14,450,000, *less* any amount paid by CAMC under section 7.2, 7.3, or 7.4 of the Cyprus Settlement Agreement.

20.     On February 18, 2021, the Debtor filed a motion [D.I. 49] seeking approval of the Original DIP Credit Agreement.  On April 5, 2021, the Court entered an order [D.I. 219] (the "DIP Order") authorizing the Debtor to borrow up to $14,450,000 in financing under the Original DIP Credit Agreement on a final basis.

21.     While the DIP Loans are unsecured, they are entitled to superpriority administrative expense status pursuant to section 364(c) of the Bankruptcy Code.  All unpaid principal of each DIP Loan and all other obligations under the Original DIP Credit Agreement, including accrued and unpaid interest, will be deemed to be fully, finally, and forever released, relinquished, forgiven, and discharged on the effective date of a chapter 11 plan that incorporates the Cyprus Settlement and is acceptable to CAMC.

22.     Paragraph 3 of the DIP Order authorizes the Debtor "to enter into modifications and amendments to the Original DIP Credit Agreement as may be agreed upon in writing by the Debtor and CAMC without further notice or approval of the Court; *provided*, *however*, that such modifications are not materially adverse to the Debtor or its estate."  *See* D.I. 219, at ¶ 3.  The Debtor and CAMC previously entered into three (3) amendments to the Original DIP Credit Agreement that were not materially adverse to the Debtor's estate.

23.     On February 11, 2022, the Court entered an order authorizing the Debtor to enter into the *Fourth Amendment to Superpriority Debtor-in-Possession Credit Agreement* (the "Fourth Amendment"), pursuant to which, subject to the terms of the Fourth Amendment, CAMC agreed to extend up to an additional $10,000,000 of superpriority debtor-in-possession financing to the Debtor, in addition to the $14,450,000 previously committed.  *See* D.I. 865.  On February 14, 2022, the Debtor and CAMC entered into the Fourth Amendment.

24.     On June 21, 2022, the Court entered an order authorizing the Debtor to enter into the *Amended and Restated Superpriority Debtor-in-Possession Credit Agreement* (the "A&R DIP Credit Agreement"), pursuant to which, subject to the terms of the A&R DIP Credit Agreement, CAMC agreed to extend approximately $8,000,000 of additional superpriority debtor-in-possession financing to the Debtor, in addition to the $24,450,000 previously committed. *See* D.I. 1115.   On June 21, 2022, the Debtor and CAMC entered into the A&R DIP Credit Agreement.

25.     Since that time, the Debtor and CAMC have entered into eleven (11) amendments to the A&R DIP Credit Agreement (the "A&R DIP Credit Agreement Amendments"), pursuant to which CAMC agreed to (i) extend up to $25,200,000 of superpriority debtor-in-possession financing to the Debtor in addition to the $32,450,000 previously committed, (ii) extend certain milestones under the A&R DIP Credit Agreement, and (iii) extend the maturity date of the DIP Loans through March 31, 2025.   The Court entered orders approving increases in the amount of debtor-in-possession financing committed by CAMC under the A&R DIP Credit Agreement.  *See* D.I. 1534, 1643, 1793, 1952, 2140, and 2415.  Because extensions of milestones and the maturity date were not materially adverse to the Debtor or its estate, the Debtor was not required to seek Court approval of those provisions prior to entering the A&R DIP Credit Agreement Amendments. *See* D.I. 219, at ¶ 3.

**C.     The Debtor's Need for the Twelfth Amendment to the A&R DIP Credit Agreement.**

26.     When entering into the Original DIP Credit Agreement and the A&R DIP Credit Agreement, the Debtor sized its liquidity and financing needs based on a number of factors, including the anticipated timeline of this Case, anticipated professional fees, and projected payments to other third parties.  As this Case has progressed, the Debtor has determined at various

inflection points that additional financing was required to continue administering the Case.  The Debtor has reached another such inflection point.

27.    Following the successful conclusion of the multi-year Mediation of Global Settlement Issues and Plan Issues and entry of the J&J Settlement Order and the Solicitation Procedures Order, the Debtor currently is soliciting votes to accept or reject the Plan and engaging in extensive discovery relating to confirmation of the Plan.  In an exercise of its sound business judgment, the Debtor has determined that additional financing is required to further administer this Case and seek confirmation of the Plan.[3]

**D.    Overview of the Amendment and Summary Pursuant to Local Rule 4001-2(a)(i).**

28.    In recent weeks, the Debtor and its advisors engaged with CAMC regarding the Debtor's additional financing and liquidity needs.  Following these negotiations, the Debtor and CAMC agreed to enter into the Amendment, with the extension of new money DIP Loans being subject to Court approval.

29.    The Amendment, among other things, increases the maximum aggregate amount of DIP Loans the Debtor is permitted to borrow, and CAMC is obligated to advance, by $9,000,000.  The Amendment, however, does not change the nature or treatment of the DIP Loans.  The DIP Loans will remain unsecured and entitled to superpriority administrative expense status under section 364(c) of the Bankruptcy Code.  Consistent with the Original DIP Credit Agreement and the A&R DIP Credit Agreement, all unpaid principal of each DIP Loan and all other obligations under the Amendment, including accrued and unpaid interest, still will be deemed to be fully,

---

[3]  The Debtor may require a further amendment to and extension of the A&R DIP Credit Agreement to provide the Debtor with sufficient liquidity to fund this Case through confirmation and consummation of the Plan.

finally, and forever released, relinquished, forgiven, and discharged on the effective date of a

chapter 11 plan that incorporates the Cyprus Settlement and is acceptable to CAMC.

30.     The following chart summarizes the principal terms of the Amendment that differ

from the A&R DIP Credit Agreement (as amended), as required under Bankruptcy Rules 4001(b)

and (c) and Local Rule 4001-2:[4]

| Material Term:[5] | Proposed Modification: |
| --- | --- |
| **DIP Loan(s) and Borrowing Limits:**<br><br>*Bankruptcy Rule 4001(c)(1)(B)*<br><br>*Local Rule 4001-2(a)(i)(A)* | The "DIP Loan Commitment Amount" will be increased by $9,000,000.<br><br>Amendment, § 1(b). |
| **Maturity Date:**<br><br>*Bankruptcy Rule 4001(c)(1)(B)*<br><br>*Local Rule 4001-2(a)(i)(M)* | The "Maturity Date" is the earlier of (i) May 31, 2025 (extended from March 31, 2025), (ii) the Consummation Date, and (iii) the date the DIP Loans are accelerated in accordance with section 8.<br><br>Amendment, § 1(c). |
| **Milestone:**<br><br>*Bankruptcy Rule 4001(c)(1)(B)(vi)*<br><br>*Local Rule 4001-2(a)(i)(H)* | The following milestone was added:<br><br>• An order confirming (or recommending confirmation of) an Acceptable Plan must be entered by the Court on or before April 30, 2025.<br><br>Amendment, § 1(a). |

31.     The Debtor believes the additional funding requested through the Amendment is

necessary and in the best interests of its estate.  The Amendment will enable the Debtor to continue

---

[4]  The terms and conditions set forth in this Motion, along with the descriptions of the terms of the Amendment and the Proposed Order, are provided solely for the convenience of the Court and parties-in-interest and are qualified in their entirety by the actual terms of the Amendment or the DIP Order, as applicable.

[5]  Increasing the DIP Loan Commitment Amount by $9,000,000 and adding a new milestone require Court approval. Extending the Maturity Date is not materially adverse to the Debtor's estate and, therefore, does not require Court approval.  *See* D.I. 219, at ¶ 3.

paying the administrative expenses of this Case as the confirmation process progresses as well as its other ongoing obligations.

32.    For these reasons, the Debtor respectfully requests that the Court authorize the Debtor to borrow up to an additional $9,000,000 in new money DIP Loans under the Amendment as a sound exercise of the Debtor's prudent business judgment.

## **BASIS FOR RELIEF REQUESTED**

### I.  **BORROWING UP TO AN ADDITIONAL $9,000,000 MILLION IN NEW MONEY DIP LOANS UNDER THE AMENDMENT IS A REASONABLE EXERCISE OF THE DEBTOR'S BUSINESS JUDGMENT AND IS IN THE DEBTOR'S BEST INTERESTS.**

33.    The Court should authorize the Debtor, as an exercise of the Debtor's sound business judgment, to increase the maximum aggregate amount of new money DIP Loans the Debtor is permitted to borrow, and CAMC is obligated to advance, by $9,000,000 in order to fund the reasonable administrative expenses of this Case.

34.    Since the Petition Date, the Debtor and its professionals have:  (i) provided significant discovery to the TCC and the FCR; (ii) actively participated in a multi-year Mediation process concerning Global Settlement Issues, Plan Issues, and Insurance Issues; (iii) filed an amended plan and disclosure statement consistent with mediated resolutions; (iv) engaged in extensive and successful settlement negotiations with J&J; (v) obtained entry of the J&J Settlement Order; (vi) obtained entry of the Solicitation Procedures Order; (vii) complied with all reporting and other obligations of a debtor-in-possession; (viii) responded to various creditor inquiries and demands; and (ix) handled various other tasks related to the administration of the Debtor's bankruptcy estate and the Case.  The Debtor currently is soliciting votes to accept or reject the Plan and engaging in extensive discovery relating to confirmation of the Plan.

35.    To date, the Debtor has exhausted a substantial portion of the DIP financing.  As of the date of this Motion, the Debtor has drawn approximately $57 million in DIP Loans under the

Original DIP Credit Agreement and A&R DIP Credit Agreement.  The Amendment will ensure that the Debtor has adequate access to financing to continue the administration of its estate while the confirmation process proceeds.

36.     Section 364 of the Bankruptcy Code governs a debtor's ability to secure postpetition financing.  11 U.S.C. § 364.  The Court previously approved the Original DIP Credit Agreement and the A&R DIP Credit Agreement and, in doing do, determined that such agreements satisfied the requirements of section 364(c) and (d) of the Bankruptcy Code.  The Amendment, which increases the amount of DIP Loans available to the Debtor under the A&R DIP Credit Agreement by $9,000,000, likewise meets the requirements of sections 364(c) and (d) of the Bankruptcy Code.

37.     *First*, there can be little doubt that no lender other than CAMC would make an unsecured loan to the Debtor on as favorable or better terms, especially given the Debtor's limited revenue-generating ability.

38.     *Second*, the Debtor has determined that it needs additional financing to administer this Case successfully, which, as noted above, is operating on a longer timeline than originally anticipated.  Without access to the increased amounts to be provided in accordance with the Amendment, the Debtor will not have sufficient liquidity to seek confirmation of the Plan or continue with the administration of this Case.  Consequently, approval of the Amendment is necessary to facilitate the Debtor's chapter 11 goals.

39.     *Third*, in a sound exercise of its business judgment, the Debtor has determined that the additional DIP Loans contemplated by the Amendment will maximize value for its estate, especially in light of the fact that the Court previously approved the terms of the Original DIP Credit Agreement and the A&R DIP Credit Agreement.  *See Trans World Airlines, Inc. v.*

*Travelers Int'l AG (In re Trans World Airlines, Inc.)*, 163 B.R. 964, 974 (Bankr. D. Del. 1994) (approving debtor-in-possession financing facility because it "reflect[ed] sound and prudent business judgment on behalf of [the debtor,] . . . [was] reasonable under the circumstances and in the best interest of [the debtor] and its creditors") (citation omitted).

40.     Importantly, there are no fees associated with the Amendment.  Moreover, all unpaid principal of the DIP Financing—including the additional $9,000,000 of availability contemplated by the Amendment—and all other unpaid obligations under the Amendment, including accrued and unpaid interest, will be deemed to be fully, finally, and forever released, relinquished, forgiven, and discharged on the effective date of a plan implementing the Cyprus Settlement and acceptable to CAMC.

41.     The Debtor submits that the Amendment reflects fair and reasonable terms and presents the best available option under the circumstances.  Overall, the Amendment represents a necessary step to preserve and maintain the value of the Debtor's estate.  Approval of the Amendment will provide greater certainty to the Debtor and its stakeholders, while continuing to facilitate the Debtor's plan confirmation process.

42.     Accordingly, the Amendment satisfies the requirements of section 364 of the Bankruptcy Code, and the Debtor respectfully requests that the Court approve the Amendment.

## II.     WAIVER OF THE STAY PERIOD UNDER BANKRUPTCY RULE 6004(h) IS APPROPRIATE.

43.     Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale, or lease of property . . . is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."  The Debtor respectfully submits that there is no reason to delay the effectiveness of the order approving this Motion.  Access to the upsized amount of DIP Loans available under the Amendment is necessary immediately to provide the Debtor much-needed

funds to administer this Case.  Accordingly, waiver of the 14-day stay period under Bankruptcy Rule 6004(h) is appropriate.

## **NOTICE**

44.     The Debtor will provide notice of this Motion to:  (a) the U.S. Trustee; (b) counsel to the TCC; (c) counsel to the FCR; (d) counsel to CAMC; and (e) the parties identified on the Master Service List established in this Case.  In light of the nature of the relief requested herein, the Debtor submits that no other or further notice is necessary under the circumstances.

## **CONCLUSION**

WHEREFORE, the Debtor respectfully requests entry of the Proposed Order granting (i) the relief requested by this Motion and (ii) such further relief as is appropriate.

*[The remainder of this page was intentionally left blank.]*

Dated:  December 10, 2024
        Wilmington, Delaware

Respectfully submitted,

**REED SMITH LLP**

By:    */s/ Jason D. Angelo*
        Kurt F. Gwynne (No. 3951)
        Jason D. Angelo (No. 6009)
        1201 North Market Street, Suite 1500
        Wilmington, DE 19801-1163
        Telephone:  (302) 778-7500
        Facsimile:  (302) 778-7575
        E-mail:  kgwynne@reedsmith.com
        E-mail:  jangelo@reedsmith.com

        -and-

        Paul M. Singer (admitted *pro hac vice*)
        Luke A. Sizemore (admitted *pro hac vice*)
        Reed Smith Centre
        225 Fifth Avenue, Suite 1200
        Pittsburgh, PA 15222
        Telephone:  (412) 288-3131
        Facsimile:  (412) 288-3063
        E-mail:  psinger@reedsmith.com
        E-mail:  lsizemore@reedsmith.com

        *Counsel to the Debtor and the Debtor-in-Possession*